IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| H & H Fast Properties Inc., | ) | Bankruptcy Number 23 B 16874 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Jacqueline P. Cox |

**SMALL BUSINESS PLAN UNDER CHAPTER 11 – SUBCHAPTER V**
_____

H & H Fast Properties Inc., Debtor and Debtor-in-Possession, by and through its attorneys, Paul M. Bach and Penelope N. Bach of Bach Law Offices, Inc. proposes the following Small Business Plan of Reorganization ("Plan") in accordance with Chapter 11, Sub-Chapter V of the Bankruptcy Code.

PREAMBLE

The Debtor filed its voluntary petition for relief pursuant to Chapter 11 – Subchapter V of the Bankruptcy Code on December 18, 2023. The Debtor has managed its financial affairs as debtor-in-possession since the inception of this case pursuant to Sections 1101, 1107 and 1108 of the Bankruptcy Code. Matthew Brash has been appointed as the Sub-Chapter V Trustee in this matter.

The Debtor is the proponent of this Plan as well as the Disbursing Agent if the plan is consensual. If the Plan is not consensual, Matthew Brash, Sub-Chapter V Trustee is the disbursing agent. This Plan provides for distributions to the holders of allowed claims from the net income from operations of the Debtor.

ARTICLE 1
HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

1.1. Nature of the Debtor's Business. – H & H Fast Properties Inc. is in the business of purchasing, rehabilitation, leasing, and selling of parcels of real estate.

ARTICLE II DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

2.1. **Administrative Expense** shall mean a cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with applicable provisions of the Bankruptcy Code.

2.2. **Allowed Claim** shall mean a claim is one or more of the following: (i) a proof of claim which is filed within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent, or (iii) that has been allowed by Order of this Court, or (iv) that is allowed by the provisions of this Plan.

2.3. **Allowed Interest** shall mean an "Interest" (as defined below) (i) proof of which has been filed within the time fixed by the Bankruptcy Rules or within the time fixed by the Bankruptcy Court; or (ii) that has been scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court; and (iii) that has been allowed by Order of this Court, or (iv) that is allowed by the provisions of this Plan.

2.4. **Bankruptcy Code** shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

2.5.     **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

2.6.     **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure as prescribed by the Supreme Court of the United States.

2.7.     **Chapter 11** shall mean Chapter 11 of the Bankruptcy Code.

2.8.     **Chapter 11 Case** shall mean the chapter 11 case commenced under Chapter 11 by the Debtor on the Petition Date, styled *In re H & H Fast Properties Inc.*, Case No. 23-11667, and currently pending in the Bankruptcy Court.

2.9.     **Claim** shall mean "claim" as defined in section 101(5) of the Bankruptcy Code

2.10.    **Confirmation** shall mean the entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.11.    **Debtor** or **Debtor in Possession** shall mean H & H Fast Properties Inc.

2.12.    **Effective Date** shall mean thirty (30) days following the entry of a Final Order confirming this Plan.

2.13.    **Final Order** shall mean (a) an order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reargument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, reargument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, reargument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for reargument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, reargument, reconsideration, rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with

applicable law.

2.14. **Late Filed Claims** shall mean claim for which the claimant filed a proof of claim after the deadline set by the Court for filing proofs of claim.

2.15. **Month** shall mean a calendar month, including the month in which a date or event occurs.

2.16. **Plan** shall mean this Plan of Reorganization including any amendments or modifications thereto.

2.17. **Pro-rata** shall mean with respect to any distribution on account of any claim or matter, in the same proportion as the amount of such claim or matter bears to the aggregate amount of all claims or matters of its class. Unless otherwise defined, the words and phrases used herein shall have the meanings ascribed in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE III
## THE PLAN

The Debtor's Plan provides for payments to be made to allowed claims from the Debtor's operations and sale of real estate. As required by the Bankruptcy Code, this Plan places claims in various classes and describes the treatment of each class below in detail.

Only Creditors with allowed claims in classes that are impaired are entitled to vote on whether to accept or reject the Plan. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.

3.1.    Allowed Claims against and Allowed Interests in the Debtor in this estate shall be fixed and determined as of the Petition Date and are classified as follows:

3.2. <u>Unclassified Claims</u>

    a.      Administrative Expenses

3.3. <u>Classified Claims</u>

    a.      Class 1A - Secured Claim of Toorak Capital Partners, LLC

    b.      Class 1B - Secured Claim of Gitsit Solutions LLC

    c.      Class 1C - Secured Claim of Small Business Administration

    d.      Class 1D – Secured Claim of Cook County Treasurer (Real Estate Taxes)

    e.      Class 2 - Impaired General Unsecured Creditors

3.4.    <u>Resolution of Disputes</u>: Disputes regarding the proper classification of Claims shall be resolved pursuant to the procedures established in the Bankruptcy Code, the Rules and other applicable laws. The Court shall have exclusive jurisdiction over disputes concerning the classification of claims. Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan.

3.5.    A Claim or Interest is classified in a particular Class only to extent that the Claim or Interest qualifies within the description of that Class.

3.6.    <u>Distributions of Disputed Claims</u>: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

<u>TREATMENT OF CLAIMS AND INTERESTS</u>

### 3.7. **SALE OF REAL ESTATE**

The Debtor owns five parcels of real estate as stated on the Debtor's Schedules: 1) 3328

E. 88th St. Chicago, IL; 2) 4840 S. Ellis Avenue, Chicago, Illinois 60515 (subject to GitSit Solutions LLC mortgage and Small Business Administration mortgages); 3) 20745 S. Alexander Street Olympia Fields, Illinois (subject to Toorak Capital Partners LLC. mortgage); 4) 8736 S. Mackinaw Chicago, IL 60461 and 5) 8724 S. Mackinaw Chicago, IL. The real estate commonly known as 4840 S. Ellis Avenue, Chicago, Illinois ("the Ellis Avenue Property") and 20745 Alexander Street, Olympia Fields, Illinois 60461 ("the Alexander Street Property") will be sold as follows:

    a.  **4840 S. Ellis Avenue, Chicago, Illinois**-

(1) The Ellis Avenue Property currently has two liens: (A) Gitsit Solutions, LLC in the amount of $1,377,866.46 (Proof of Claim 3-1) which the Debtor has objected to the Proof of Claim; and (B) the U.S. Small Business Administration ("SBA") in the amount of $1,079,170.97. It is anticipated that the Gitsit Solutions, LLC will be paid off by a sale of the Ellis Avenue Property (to the extent there are funds with any amount not paid converted into an unsecured nonpriority claim and paid under Class 2) and the security interest of SBA will be transferred to other real estate as provided by Class 1C of this Chapter 11 Plan;

(2) The Debtor's schedules states that the fair market value of the Ellis Street Property is $2,300,000.00. The Debtor has received an offer of $1,100,000.00 to purchase the real property. Since the amount of the proposed offer is below the fair market value on the Debtor's Schedules the Debtor will be filing a Motion to Employ a Real Estate Agent prior to or at the same time of this Chapter 11 Plan's Confirmation Hearing. After at least two months but not more than four months of active marketing by the Real Estate Agent if there is no superior offer the Debtor will ask authority of the court to sell the Ellis Street Property and use the $1,100,000.00 offer. In the event there is a superior offer during the marketing period the Debtor

-6-

will ask authority to sell to the superior offer or the existing offer can match that offer;

(3) The Plan Injunction shall be modified four months after confirmation in the event the sale of the Ellis Street Property is not closed.

b. 20745 Alexander Street, Olympia Fields, Illinois 60461

1. The Alexander Street property currently has one lien which is Toorak Capital Partners, LLC in the amount of $392,565.57 (Proof of Claim 9-1). It is anticipated that Toorak Capital Partners will be paid off by a sale of the Alexander Street Property (to the extent there are funds with any amount not paid converted into an unsecured nonpriority claim and paid under Class 2);

2. The Debtor's schedules states that the fair market value of the Alexander Street Property is $300,000.00. The Debtor has received an offer of $325,000.00 to purchase the real property. The Proof of Claim of Toorak Capital Partners, LLC asserts a fair market value of $367,000.00. Since the amount of the proposed offer is below the fair market value on the Proof of Claim the Debtor will be filing a Motion to Employ a Real Estate Agent prior to or at the same time of this Chapter 11 Plan's Confirmation Hearing. After at least two months but not more than four months of active marketing by the Real Estate Agent if there is no superior offer the Debtor will ask authority of the court to sell the Alexander Street Property and use the $325,000.00 offer. In the event there is a superior offer during the marketing period the Debtor will ask authority to sell to the superior offer or the existing offer can match that offer;

3. The Plan Injunction shall be modified four months after confirmation in the event the sale of the Ellis Street Property is not closed.

### 3.8. TREATMENT OF UNIMPAIRED CLAIMS

The following classes are unimpaired by the Plan in accordance with Section 1124 of the

Bankruptcy Code or are not required to be classified in this Plan of Reorganization under provisions of the Bankruptcy Code

    **i.**     **Administrative Expenses.**

These claimants represent claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash or as otherwise agreed. Payment of Professional Fees shall be subject to the provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. Administrative claims shall be paid upon liquidation of assets to: Matthew Brash – Sub-Chapter V Trustee upon Court's approval of fees (Approximately $10,000); and Paul M. Bach and Penelope N. Bach of Bach Law Offices, Inc. upon Court Approval (Approximately $50,000). The Debtor expects Administrative Claims will be approximately $60,000.00 as of the Effective date.

    **iii.**     **TREATMENT OF IMPAIRED CLAIMS**

The claims in the Classes listed below are impaired by the Plan:

**A.**     **ALLOWED PRIORITY CLAIMS THAT ARE IMPAIRED**

Claimants shall be paid the full value of his claim from the liquidation of Debtor's assets.

**ALLOWED SECURED CLAIMS**

    **Class 1A – Toorak Capital Partners, LLC –** Toorak Capital Partners, LLC its principals, agents, successors and/or assigns ("Toorak"). Class 1A is impaired. In its Proof of Claim (9-1), Toorak asserts that it holds a security interest in the Alexander Street Property. Toorak will receive, on account of its allowed secured claim, the proceeds on the sale of the Alexander Street Property as provided in

this Plan. Any allowed amount remaining after the sale of the Alexander Street Property will convert to an unsecured nonpriority claim and be paid under Class 2. Upon payment of the full of the allowed secured claim of Toorak via sale of the Alexander Street Property provided for in this paragraph and this Plan, Toorak shall release all security agreements against property of the Debtor.

**Class 1B –Gitsit Solutions LLC –** Gitsit Solutions, LLC its principals, agents, successors and/or assigns ("Gitsit"). Class 1B is impaired. In its Proof of Claim (3-1), Gitsit asserts that it holds a security interest in the Ellis Avenue Property. Gitsit will receive, on account of its allowed secured claim, the proceeds on the sale of the Ellis Avenue Property as provided in this Plan. Any allowed amount remaining after the sale of the Ellis Avenue Property will convert to an unsecured nonpriority claim and be paid under Class 2. Upon payment of the full of the allowed secured claim of Gitsit via sale of the Ellis Avenue Property provided for in this paragraph and this Plan, Gitsit shall release all security agreements against property of the Debtor.

**Class 1C – Small Business Administration –** U.S. Small Business Administration ("SBA"), its principals, agents, successors and/or assigns. Class 1C is impaired by this Plan and will be paid according to the terms stated in the original note of payments of $4,951.00 beginning in March 2025. In its Proof of Claim (7-1) SBA asserts that it holds a second priority security interest in the Ellis Street Property. Upon confirmation of this Chapter 11 Plan the Debtor will prepare with approval mortgages for the following real estate which will secure the SBA as follows: 1) 33 N Lotus, Chicago, Illinois; 2) 10219 S. Lafayette,

Chicago, Illinois; 3) 8737 S. Mackinaw, Chicago, Illinois; 4) 8724 S. Mackinaw, Chicago, Illinois and 3328 E. 88th Street, Chicago, Illinois. Upon recording of the mortgages as these five properties SBA shall release the Ellis Avenue mortgage.

**Class 1D – Cook County Treasurer –** Cook County Treasurer its principals, agents, successors and/or assigns ("Cook County"). Class 1D is impaired by this Plan and will be paid in sixty months. In its Proof of Claim (1-1), Cook County asserts that it holds a security interest as to real estate taxes. Cook County will receive, on account of its secured claim, payment in full of the secured claim $19,990.84 plus 18% interest in payments beginning the first on the month after the effective date of $400.00 per month.

**ALLOWED GENERAL UNSECURED CLAIMS**

**Class 2 - Allowed General Unsecured Claims**:

Debtor's general unsecured creditors total $1,243,632.52. The creditors are:

| Creditor Name | Claim Amount |
|---|---|
| ADT Security Services | $1,227.79 |
| Fifth Third Bank | $79,701.75 |
| Gitsit Solutions, LLC | $327,866.46[1] |
| Internal Revenue Service | 5,094.59 |
| KISC English Corp | $300,000.00[2] |
| LJ Ross People's Gas | $2,068.00 |
| Lowe's | $490.88 |
| Toorak Capital Partners, LLC | $92,565.57[3] |
| U.S. Bank | $7,443.06 |
| **Total Unsecured Claims** | **$1,243,632.52** |

---

[1] Proof of Claim 3-1 of Gitsit Solutions, LLC asserts an amount due of $1,377,866.46. The Debtor has filed a claim objection which is before the Court and has not been ruled upon to date. The amount listed in the chart is an estimated unsecured portion based upon the Claim objection and projected sale price of the respective property.
[2] Proof of Claim 6-1 of KICS English Corp. asserts an amount due of $1,391,571. The Debtor has filed a claim objection based on a prior settlement agreement between the Debtor and KICS English Corp. in the amount of $300,000.00.
[3] Proof of Claim 9-1 of Toorak Capital Partners, LLC asserts an amount due of $392,565.57. The Debtor has filed a claim objection which is before the Court and has not been ruled upon to date. The amount listed in the chart is an estimated unsecured portion based upon the Claim objection and projected sale price of the respective property.

Each Holder of Allowed Class 2 Claims shall be paid a pro rata share beginning the first of the month after the effective date of $7,073.05 per month for sixty months. Class 2 is impaired under this Plan.

### LIQUIDATION ANALYSIS

Failure of the Debtor to obtain Confirmation of his Plan could result in a forced liquidation or a conversion to a case under Chapter 7 of the Bankruptcy Code. Should this matter convert to a Chapter 7, it would cause another layer of administrative costs to be added, such as; (i) costs of sale; (ii) Trustee's fees; and (iii) fees to trustee's counsel which will significantly reduce the funds to be tendered to creditors.

The Debtor will be paying the liquidation value of its assets as stated on the Schedules through this Chapter 11 Plan. It is likely that any liquidation would bring less proceeds that this amount. All creditors would therefore receive significantly less through a conversion to Chapter 7 than through the liquidation as proposed herein.

### ARTICLE IV IMPLEMENTATION OF PLAN

4.1     All of the assets of the Debtor and this estate shall vest in the Debtor upon Confirmation of the Plan subject to the liquidation, terms and conditions of this Plan.

4.2     If the Plan is confirmed under § 1191(a), all payments will be made by the Debtor. However, if the plan is confirmed under § 1191(b), all proceeds of liquidation shall be tendered to Neema Varghese, Sub-Chapter V Trustee for distribution.

4.3     The Debtor shall be entitled to manage its affairs and operate its businesses without further Order of this Court subject to the liquidation, terms and conditions of this Plan. No agent of the Debtor shall be compensated for managing the Estate's affairs and completing the Plan.

  4.4 Upon Confirmation, the confirmed Plan shall become a binding agreement between the Debtor and its creditors, superseding all pre-petition obligations of the Debtor to its Creditors. So long as Debtor acts in accordance with the Plan terms, Creditors shall have no right of action (including but not limited to proceeding with a foreclosure sale and other State Court rights) against Debtor or any personal guarantor such as Amanda Henderson as to creditors, to pursue Debtor for payment and Creditors are enjoined and prohibited from taking such action except as set forth in the Plan. Any such action by a Creditor violating this paragraph shall give the Debtor or Amanda Henderson a Cause of Action against such Creditor for Damages, which shall be determined just as Damages are computed and allowed for a Violation of the Automatic Stay/Discharge Injunction/Confirmation Order.

  4.5 This Plan is self-executing. The Debtor shall not be required to execute any newly created documents to evidence the claims, liens or terms of repayment to the holder of any Allowed Claim, except for the Restructured Promissory Note and all other loan documents.

ARTICLE V EXECUTORY CONTRACTS

5.1.1 -The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: None.

5.1.2 - All executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned or rejected by the Debtor shall be deemed assumed by the Debtor as of the Confirmation of this Plan. Any proofs of claims regarding any accepted Executory Contracts shall be filed within thirty days of plan confirmation.

ARTICLE VI<br>COURT'S RETENTION OF JURISDICTION

  6.1 The Bankruptcy Court shall retain jurisdiction after Confirmation to:

(i) consider applications for fees and allowances for professional persons;

(ii) supervise the implementation and enforce the terms of this Plan;

(iii) consider objections to claims against the estate of the Debtor and to modify the Plan based on the outcome of objections;

(iv) hear and conclude all adversary proceedings or contested matters;

(v) resolve disputes regarding interpretation of this Plan;

(vi) fix expenses of administration;

(vii) enter Orders to further consummation of the Plan;

(viii) approve modification of the Plan upon motions brought before the Bankruptcy Court;

(ix) consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation;

(x) hear and conclude any adversary proceedings and other matters relating or giving rise to litigation recoveries;

(xi) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

(xii) enter an Order concluding and terminating this Chapter 11 Case; and

(xiii) enter an Order of Discharge if confirmed under § 1191(b).

## ARTICLE VII
## CONFIRMATION AND DISCHARGE

7.1 If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent

specified in § 1141(d)(1)(A) of the Code.

The Debtor will not be discharged from any debt:

(i) imposed by this Plan; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under §1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan,

or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VIII
## UNCLAIMED PROPERTY

8.1 In the event that any distribution made by the Debtor under this Plan remains unclaimed one hundred (180) days after such distribution is made, this distribution will become property of the estate to be distributed to general unsecured creditors and shall not be recouped in subsequent distributions. After expiration of the one hundred (180) day period set forth herein, the claimant whose funds remain unclaimed shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE IX
## INVALIDATION OF LIENS

9.1 The provisions of the confirmed Plan shall bind all creditors and other parties in

interest, whether or not such persons accept the Plan. The distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all Claims against any of the assets or properties of the Debtor. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded from asserting any Claim or lien against the Debtor that arose prior to the Petition Date or during the Chapter 11 Case and shall not retain any pre-petition liens except as allowed by this Chapter 11 Plan.

## ARTICLE X
## INTEREST AND PENALTIES

10.1 Except as otherwise provided herein, or required by the Bankruptcy Code, no default interest or penalties accruing on or after the Petition Date, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

## ARTICLE XI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

11.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor have scheduled such claim as disputed, contingent, or unliquidated. Debtor anticipates no disputed claims and the Debtor does not intend to further dispute claims beyond the treatment identified to those creditors under Class 1 of the Plan.

11.02 Claim Objection Deadline. The Debtor shall file any and all objections to claims on or before the date that is sixty (60) days after the Effective Date of the Plan if any.

H & H Fast Properties Inc.,

By: /s/Paul M. Bach<br>Paul M. Bach, one of his attorneys

DEBTOR'S COUNSEL:
Paul M. Bach
Penelope N. Bach
Bach Law Offices, Inc.
P.O. Box 1285
Northbrook, Illinois 60062
847 564 0808

-16-