IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| H & H Fast Properties Inc., | ) | Bankruptcy Number 23 B 16874 |
| | ) | |
| Debtor. | ) | |
| | ) | Judge Jacqueline P. Cox |

**FOURTH AMENDED SMALL BUSINESS PLAN UNDER
CHAPTER 11 – SUBCHAPTER V**
_____

H & H Fast Properties Inc., Debtor and Debtor-in-Possession, by and through its attorneys, Paul M. Bach and Penelope N. Bach of Bach Law Offices, Inc. proposes the following Fourth Amended Small Business Plan of Reorganization ("**Plan**") in accordance with Chapter 11, Sub-Chapter V of the Bankruptcy Code.

PREAMBLE

The Debtor filed its voluntary petition for relief pursuant to Chapter 11 – Subchapter V of the Bankruptcy Code on December 18, 2023. The Debtor has managed its financial affairs as debtor-in-possession since the inception of this case pursuant to Sections 1101, 1107, and 1108 of the Bankruptcy Code. Matthew Brash has been appointed as the Sub-Chapter V Trustee in this matter.

The Debtor is the proponent of this Plan as well as the Disbursing Agent if the plan is consensual. If the Plan is not consensual, Matthew Brash, Sub-Chapter V Trustee is the disbursing agent. This Plan provides for distributions to the holders of allowed claims from the net income from operations of the Debtor.

-1-

ARTICLE 1
HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

1.1. Nature of the Debtor's Business. – H & H Fast Properties Inc. is in the business of purchasing, rehabilitation, leasing, and selling of parcels of real estate.

ARTICLE II DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

2.1. **Administrative Expense** shall mean a cost or expense of administration of this Chapter 11 case, including any actual and necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with applicable provisions of the Bankruptcy Code.

2.2. **Allowed Claim** shall mean a claim is one or more of the following: (i) a proof of claim which is filed within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent, or (iii) that has been allowed by Order of this Court, or (iv) that is allowed by the provisions of this Plan.

2.3. **Allowed Interest** shall mean an "Interest" (as defined below) (i) proof of which has been filed within the time fixed by the Bankruptcy Rules or within the time fixed by the Bankruptcy Court; or (ii) that has been scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court; and (iii) that has been allowed by Order of this Court, or (iv) that is allowed by the provisions of this Plan.

2.4. **Bankruptcy Code** shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

101546720.2

2.5. **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

2.6. **Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure as prescribed by the Supreme Court of the United States.

2.7. **Chapter 11** shall mean Chapter 11 of the Bankruptcy Code.

2.8. **Chapter 11 Case** shall mean the chapter 11 case commenced under Chapter 11 by the Debtor on the Petition Date, styled *In re H & H Fast Properties Inc.*, Case No. 23-11667, and currently pending in the Bankruptcy Court.

2.9. **Claim** shall mean "claim" as defined in section 101(5) of the Bankruptcy Code

2.10. **Confirmation** shall mean the entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.11. **Debtor** or **Debtor in Possession** shall mean H & H Fast Properties Inc.

2.12. **Plan Effective Date** shall mean the date on which a Final Order confirming this Plan is entered.

2.13. **Final Order** shall mean (a) an order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek reargument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, reargument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, reargument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for reargument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, reargument, reconsideration, rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with

applicable law.

2.14. **Late Filed Claims** shall mean a claim for which the claimant filed a proof of claim after the deadline set by the Court for filing proofs of claim.

2.15. **Month** shall mean a calendar month, including the month in which a date or event occurs.

2.16. **Plan** shall mean this Plan of Reorganization including any amendments or modifications thereto.

2.17. **Pro-rata** shall mean with respect to any distribution on account of any claim or matter, in the same proportion as the amount of such claim or matter bears to the aggregate amount of all claims or matters of its class. Unless otherwise defined, the words and phrases used herein shall have the meanings ascribed in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE III
## THE PLAN

The Debtor's Plan provides for payments to be made to allowed claims from the Debtor's operations and sale of machine, equipment, and vehicles. As required by the Bankruptcy Code, this Plan places claims in various classes and describes the treatment of each class below in detail.

Only Creditors with allowed claims in classes that are impaired are entitled to vote on whether to accept or reject the Plan. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.

3.1. Allowed Claims against and Allowed Interests in the Debtor in this estate shall be fixed and determined as of the Petition Date and are classified as follows:

    3.2. Unclassified Claims

        a.      Administrative Expenses

    3.3. Classified Claims

        a.      Class 1A - Secured Claim of Toorak Capital Partners, LLC

        b.      Class 1B - Secured Claim of Gitsit Solutions LLC

        c.      Class 1C - Secured Claim of Small Business Administration

        d.      Class1D - Secured Claim of Cook County Treasurer (Real Estate Taxes)

        e.      Class 1E - Secured Claim of Newline Holdings LLC

        f.      Class 2 - Impaired General Unsecured Creditors

3.4.      Resolution of Disputes: Disputes regarding the proper classification of Claims shall be resolved pursuant to the procedures established in the Bankruptcy Code, the Bankruptcy Rules and other applicable laws. The Court shall have exclusive jurisdiction over disputes concerning the classification of claims. Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan.

3.5.      A Claim or Interest is classified in a particular Class only to extent that the Claim or Interest qualifies within the description of that Class.

3.6.      Distributions of Disputed Claims: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the respective holder of an allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

TREATMENT OF CLAIMS AND INTERESTS

### 3.7. PAYOFF OF REAL ESTATE

The Debtor owns five parcels of real estate as stated on the Debtor's Schedules: 1) 3328 E. 88th St. Chicago, IL; 2) 4840 S. Ellis Avenue, Chicago, Illinois 60515 (subject to GitSit Solutions LLC mortgage and Small Business Administration mortgages); 3) 20745 S. Alexander Street Olympia Fields, Illinois (subject to Toorak Capital Partners LLC mortgage); 4) 8736 S. Mackinaw Chicago, IL 60461 and 5) 8724 S. Mackinaw Chicago, IL. The real estate commonly known as 4840 S. Ellis Avenue, Chicago, Illinois ("**the Ellis Avenue Property**") and 20745 Alexander Street, Olympia Fields, Illinois 60461 ("**the Alexander Street Property**") will be paid off as follows:

    a. **4840 S. Ellis Avenue, Chicago, Illinois**-

(1) The Ellis Avenue Property currently has two liens: (A) Gitsit Solutions, LLC ("**Gitsit**") in the amount of $1,377,866.46 (Proof of Claim 3-1) which the Debtor has objected to the Proof of Claim asserting the claim amount should be $1,050,000.00; and (B) the U.S. Small Business Administration ("**SBA**") in the amount of $1,079,170.97. The previously filed Plan anticipated that Gitsit Solutions, LLC would be paid off through sale of the Ellis Avenue property. Upon further analysis of the property value and the offers to date (as summarized in the following paragraph) the Debtor has determined sale would not be constructive as the actual value exceeds the proposed sale by a large amount. The Debtor will begin making monthly payments of $3,000.00 per month to Gitsit upon confirmation of the Plan, with a balloon payment of the remaining balance to be paid off within one year of Confirmation of this Chapter 11 Plan. For payment terms, the Debtor will submit a good faith deposit of $10,000.00 and enter a monthly payment plan of $3,000.00, which amount shall be applied as a deduction from the settlement

balance, with a one-year balloon payment of the remaining balance to be paid off one year after the first payment of $3,000. The security interest of SBA will be transferred to other real estate as provided by Class 1C of this Chapter 11 Plan;

(2) The Debtor will continue with construction projects and liquidate machinery, equipment and vehicles to submit good faith deposits. The Debtor's schedules state that the fair market value of machinery, equipment and vehicles values are over $70,000.00;

    b. **20745 Alexander Street, Olympia Fields, Illinois 60461**

(1) The Alexander Street Property currently has one lien which is held by Toorak Capital Partners, LLC ("**Toorak**") in the amount of $526,587.88 (Proof of Claim 9-3) (the "**Toorak POC**"). The Debtor, Toorak, and Amanda L. Henderson ("**Henderson**," and together with Debtor and Toorak, collectively, the "**Parties**") have entered into the Settlement Agreement and Release attached hereto as **Exhibit 1** (the "**Settlement Agreement**"). The pertinent terms of the Settlement Agreement are set forth below.[1] The Debtor will file a motion to approve the Settlement Agreement with the Bankruptcy Court pursuant to the Plain Milestones (as defined in the Settlement Agreement and below).

    a. **Judgment against Henderson; Settlement Payment; Bankruptcy Court Approval; Plan Confirmation; Plan Milestones.**
        i. Judgment against Henderson; Dismissal of Adversary.
            1. Judgment. Contemporaneously with the execution of the Settlement Agreement, Henderson shall execute a final, agreed judgment to be entered against Henderson in the action pending in the Cook County, Illinois Circuit Court (the "**State Court**"), captioned *Toorak Capital Partners, LLC v. H & H Fast Properties, Inc., et al.*, Case No. 2022 CH 07009 (the "**Foreclosure**"), in substantially the form set forth in **Appendix A** to the Settlement Agreement (the "**Judgment**"), which Judgment shall be in the amount of $526,587.88 as of November 30, 2024. As soon as practicable after the Effective Date (as defined in the Settlement Agreement), the Parties shall (i) cause the Judgment and a memorandum thereof—in

---

[1] To the extent of any conflict between the terms of this Plan and the Settlement Agreement, the Settlement Agreement shall control.

-7-

101546720.2

substantially the form set forth in **Appendix B** to the Settlement Agreement (the "**MOJ**")—to be entered by the State Court; and (ii) record the MOJ.

2. Adversary Dismissal. As soon as practicable after the Effective Date (as defined in the Settlement Agreement), Debtor shall cause the adversary proceeding in the Bankruptcy Court captioned *H & H Fast Properties, Inc. v. Toorak Capital Partners, LLC*, Case No. 24 A 00020 (the "**Adversary**"), to be dismissed, with prejudice.

ii. Settlement Amount.
   1. Payment. Debtor shall cause to be paid to Toorak the sum of $500,000.00 (the "**Toorak Settlement Amount**") as follows:
      a. On the Plan Effective Date (as defined below and in the Settlement Agreement), Debtor shall cause to be paid to Toorak the sum of $10,000.00, which will be applied against the Toorak Settlement Amount;
      b. On the Plan Effective Date (as defined below and in the Settlement Agreement) and on the first Business Day of each month thereafter for six (6) consecutive months, Debtor shall cause to be paid to Toorak monthly installments in the amount of $3,000.00, which installments will be applied against the Toorak Settlement Amount.
      c. On the last Business Day of the sixth month after the Plan Effective Date, Debtor shall cause to be paid to Toorak the balance of the Toorak Settlement Amount.

iii. Bankruptcy Court Approval; Plan Confirmation.
   1. Debtor shall file its amended Plan and disclosure statement (whether combined or as separate documents) (collectively, the "**Plan**") in form and substance acceptable to Toorak, which shall attach as an exhibit and incorporate by reference the Settlement Agreement, and the Debtor shall promptly seek pursuant to the Plan Milestones (as defined below and in the Settlement Agreement) confirmation of the Plan pursuant to a confirmation order (the "**Confirmation Order**") to be entered by the Bankruptcy Court in form and substance acceptable to Toorak and approval of the Settlement Agreement pursuant to the Approval Order (as defined below).
   2. Debtor shall file a motion to approve the Settlement Agreement (the "**Approval Motion**") pursuant to an order (the "**Approval Order**") to be entered by the Bankruptcy Court in form and substance acceptable to Toorak, which such Approval Order shall include a waiver of the 14-day stay arising under Fed. R. Bankr. P. 6004(h).
   3. The Plan shall fully comply with all applicable provisions of the Bankruptcy Code, and the Plan shall include the allowed Toorak POC in the amount of $526,587.88 as of November 30, 2024, in a separate class, which shall be deemed "impaired," and Toorak shall be deemed to have accepted the Plan pursuant to Section 1126(c) of the Bankruptcy Code provided that the Plan fully complies with the

-8-

      Settlement Agreement.
4. Upon the Plan Effective Date (as defined below and in the Settlement Agreement), the Settlement Agreement and the Plan shall be binding on Debtor and its estate.
5. The Confirmation Order shall include a waiver of the 14-day stay arising under Fed. R. Bankr. P. 3020(e).
6. Until the Confirmation Order and Approval Order are entered by the Bankruptcy Court, the Settlement Agreement shall not be binding on or enforceable against Toorak.
7. The Motion for Relief from Stay filed by Toorak in the Bankruptcy Court [Dkt. No. 59] (the "**MFR**") shall remain pending until the Toorak Settlement Amount is paid in full, after which date the MFR shall be deemed withdrawn.

  iv. Plan Milestones. Debtor shall comply with the following milestones with respect to the filing, confirmation and consummation of the Plan and the approval of the Settlement Agreement (collectively, the "**Plan Milestones**"): (i) Debtor shall file the Plan and Approval Motion no later than February 3, 2025; (ii) Debtor shall cause the Bankruptcy Court to schedule the hearing on confirmation of the Plan (and approval of the disclosure statement) and approval of the Settlement Agreement pursuant to the Approval Motion (collectively, the "**Confirmation Hearing**") no later than February 28, 2025; and (iii) Debtor shall substantially consummate the Plan and the Settlement Agreement so that the Plan becomes effective no later than February 28, 2025 (the "**Plan Effective Date**").

  v. Dismissal of Foreclosure; Release of Judgment and Mortgage. As soon as practicable following receipt by Toorak of the full Toorak Settlement Amount and compliance with the other terms of the Settlement Agreement, Toorak shall (i) file a motion in the State Court to dismiss the Foreclosure, (ii) cause the Judgment to be vacated and MOJ released, and (iii) cause to be released that certain Mortgage and Security Agreement, Assignment of Rents and Leases, and Fixture Filing Statement recorded with the Cook County Recorder of Deeds on September 16, 2019 as Document No. 1925915030 (the "**Mortgage**").

b. **Settlement Default; Remedies.**
 i. Settlement Default. Debtor and Henderson agree that the occurrence of any of the below events shall constitute a "**Settlement Default**" under the Plan and the Settlement Agreement:
1. Debtor and/or Henderson fails to make any payment or take any other action required under the Settlement Agreement (including but not limited to failure to comply with any of the Plan Milestones).
2. The occurrence of any other breach of the Settlement Agreement by Debtor and/or Henderson.
3. The occurrence of any default or Event of Default under the Loan Documents (as defined in the Settlement Agreement) (other than those previously asserted in the Foreclosure).

-9-

4. The failure to keep the Alexander Street Property insured and/or pay the 2024 real estate taxes due with respect to the Alexander Street Property.
5. Any of the representations or warranties made by Debtor and Henderson in the Settlement Agreement, in connection with the negotiation and execution of the Settlement Agreement or in any report, statement or information provided by Debtor and/or Henderson to Toorak in accordance with the terms of the Settlement Agreement shall have been false or misleading when made.
6. Henderson: (i) institutes or has instituted against her or any of her property any bankruptcy, reorganization, receivership, conservatorship, custodianship, sequestration or other similar judicial or non-judicial proceedings; (ii) makes, permits or agrees to make or permit an assignment or abandonment, whether or not conditional, of some or all of her property for the benefit of some or all of her creditors; (iii) ceases doing business in the ordinary course; or (iv) has commenced against her or her property a foreclosure or other action for the collection of any indebtedness.
7. Toorak is divested of all or any part of the Toorak Settlement Amount by reason of a fraudulent transfer action concerning Debtor and/or Henderson or an action arising in, under or related to any federal or state bankruptcy, receivership or other insolvency proceeding concerning Debtor and/or Henderson.

ii. <u>Remedies</u>. Upon a Settlement Default: (i) Toorak shall be entitled to the immediate entry of an order by the Bankruptcy Court granting the MFR; (ii) the Alexander Street Property shall immediately be conveyed to Toorak by way of a deed-in-lieu of foreclosure, via proceedings in the Foreclosure (which Debtor and Henderson shall not contest), or via other means chosen by Toorak in its sole and absolute discretion; (iii) Toorak shall immediately have the right to enforce the Judgment, and otherwise enforce its rights and remedies under the Loan Documents (as defined in the Settlement Agreement) as provided by applicable law and as otherwise set forth in the Settlement Agreement; (iv) Toorak shall have the right to recover the amount of its costs, expenses and attorneys' fees incurred enforcing its rights; and (v) Debtor and Henderson shall not object to or contest the aforementioned relief and remedies.

iii. <u>Cure Period</u>. In the case of a Settlement Default related to the payment of a sum of money, there shall be no notice, grace or cure period. With respect to any other (non-monetary) Settlement Default, Debtor and/or Henderson shall have the right to cure same within five (5) Business Days after notice from Toorak.

(2) The Debtor's will continue with construction projects, liquidate machinery, equipment and vehicles to submit good faith deposits. The Debtor's schedules state that the fair

-10-

101546720.2

market value of machinery, equipment and vehicles are over $70,000.00;

### 3.8. TREATMENT OF UNIMPAIRED CLAIMS

The following classes are unimpaired by the Plan in accordance with Section 1124 of the Bankruptcy Code or are not required to be classified in this Plan of Reorganization under provisions of the Bankruptcy Code.

#### i. **Administrative Expenses.**

These claimants represent claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash or as otherwise agreed. Payment of Professional Fees shall be subject to the provisions of Section 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. Administrative claims shall be paid upon liquidation of assets to: Matthew Brash – Sub-Chapter V Trustee upon the Bankruptcy Court's approval of fees (Approximately $10,000.00); and Paul M. Bach and Penelope N. Bach of Bach Law Offices, Inc. upon Bankruptcy Court approval (Approximately $50,000.00). The Debtor expects Administrative Claims will be approximately $60,000.00 as of the Plan Effective Date.

#### ii. **TREATMENT OF IMPAIRED CLAIMS**

The claims in the Classes listed below are impaired by the Plan:

#### A. **ALLOWED PRIORITY CLAIMS THAT ARE IMPAIRED**

Claimants shall be paid the full value of their claim from the liquidation of Debtor's assets.

**ALLOWED SECURED CLAIMS**

**Class 1A – Toorak Capital Partners, LLC –** Toorak its principals, agents, successors and/or

-11-

assigns. Class 1A is impaired. As set forth in the Toorak POC (Proof of Claim 9-3), Toorak holds a security interest in the Alexander Street Property. Toorak will receive, on account of its allowed secured claim the sum of $500,000.00, which is the Toorak Settlement Amount, as set forth in Section 3.7(b)(1) of this Plan and the Settlement Agreement. Upon payment in full of the allowed secured claim of Toorak provided for in this Plan and the Settlement Agreement, Toorak shall release the Mortgage. In no event shall the payment of the Toorak Settlement Amount occur more than six months after the Plan Effective Date.

**Class 1B –Gitsit Solutions LLC –** Gitsit its principals, agents, successors and/or assigns. Class 1B is impaired. In its Proof of Claim (3-1), Gitsit asserts that it holds a security interest in the Ellis Avenue Property. Gitsit will receive, on account of its allowed secured claim, the proceeds of the payment plan of the Ellis Avenue Property as provided in this Plan when refinanced and in the meantime a $10,000.00 deposit followed by $3,000.00 per month beginning after the confirmed Plan and continuing during the term of the Plan until the Ellis Avenue Property is sold, refinanced or all amounts due to GitSit are paid in full. Any allowed amount remaining after the payment of the debt of the Ellis Avenue Property will convert to an unsecured nonpriority claim and be paid under Class 2. Upon payment of the full allowed secured claim of Gitsit via the payment plan of the Ellis Avenue Property provided for in this paragraph and this Plan, Gitsit shall release all security agreements against the property of the Debtor.

**Class 1C – Small Business Administration –** The SBA, its principals, agents, successors and/or assigns. Class 1C is impaired by this Plan and will be paid according to the terms stated in the original note of payments of $2,000.00 beginning upon the confirmation of the Plan. In its Proof of Claim (7-1) SBA asserts that it holds a second-priority security interest in the Ellis Avenue Property. Upon confirmation of this Chapter 11 Plan the Debtor will prepare with approval

-12-

mortgages for the agreed upon real estate which will secure the SBA. Upon recording the mortgages of the agreed properties, SBA shall release the Ellis Avenue Property mortgage.

**Class 1D – Cook County Treasurer –** Cook County Treasurer its principals, agents, successors and/or assigns ("**Cook County**"). Class 1D is impaired by this Plan and will be paid in sixty months. In its Proof of Claim (1-1), Cook County asserts that it holds a security interest as to real estate taxes. Cook County will receive, on account of its secured claim—which includes the real estate commonly known as 8736 S. Mackinaw Ave, Chicago, Illinois, regarding PIN 26-05-101-031-0000 and 26-05-101-026-0000 ($19,990.84), and 20745 Alexander Street, Olympia Fields, Illinois 60461, regarding PIN 31-24-202-008-0000 ($16,100.53)—payment in full of the secured claim of $36,090.84 plus 18% interest in payments beginning the first of the month after the Plain Effective Date of $400.00 per month.

**Class 1E – Newline Holdings LLC –** Newline Holdings LLC its principals, agents, successors and/or assigns ("**Newline**"). Class 1E is impaired by this Plan and will be paid in sixty months. In its Proof of Claim (11-1), Newline asserts that it holds a security interest as to real estate taxes regarding the real estate commonly known as 8736 S. Mackinaw Ave, Chicago, Illinois, regarding PIN 26-05-101-031-0000. Newline will receive, on account of its secured claim, payment in full of the secured claim of $13,059.39 plus 18% interest in payments beginning the first of the month after the Plan Effective Date of $500.00 per month.

**ALLOWED GENERAL UNSECURED CLAIMS**

**Class 2 - Allowed General Unsecured Claims**:

Debtor's general unsecured creditors total $396,026.07. The creditors are:

| Creditor Name | Claim Amount |
|---|---|
| ADT Security Services | $1,227.79 |

101546720.2

| | |
|---|---:|
| Fifth Third Bank | $79,701.75 |
| Internal Revenue Service | 5,094.59 |
| KISC English Corp | $300,000.00[2] |
| LJ Ross People's Gas | $2,068.00 |
| Lowe's | $490.88 |
| U.S. Bank | $7,443.06 |
| **Total Unsecured Claims** | **$396,026.07** |

Each Holder of Allowed Class 2 Claims shall be paid a pro rata share of $3,000.00 per month for forty-eight months beginning in the 13th month after confirmation of this Plan with an estimated payment of 36.3% to unsecured non priority creditors. Class 2 is impaired under this Plan.

## LIQUIDATION ANALYSIS

Failure of the Debtor to obtain Confirmation of his Plan could result in a forced liquidation or a conversion to a case under Chapter 7 of the Bankruptcy Code. Should this matter convert to a Chapter 7, it would cause another layer of administrative costs to be added, such as; (i) costs of sale; (ii) Trustee's fees; and (iii) fees to trustee's counsel which will significantly reduce the funds to be tendered to creditors.

The Debtor will be paying the liquidation value of its assets as stated on the Schedules through this Chapter 11 Plan. It is likely that any liquidation would bring less proceeds than this amount. All creditors would therefore receive significantly less through a conversion to Chapter 7 than through the liquidation as proposed herein.

## ARTICLE IV IMPLEMENTATION OF PLAN

4.1     All of the assets of the Debtor and this estate shall vest in the Debtor upon Confirmation of the Plan subject to the liquidation, terms and conditions of this Plan.

---

[2] Proof of Claim 6-1 of KICS English Corp. asserts an amount due of $1,391,571. The Debtor has filed a claim objection and the court has sustained that objection based on a prior settlement agreement between the Debtor and KICS English Corp. in the amount of $300,000.00.

-14-

101546720.2

4.2     If the Plan is confirmed under § 1191(a), all payments will be made by the Debtor. However, if the plan is confirmed under § 1191(b), all proceeds of liquidation shall be tendered to Matthew Brash, Sub-Chapter V Trustee for distribution.

4.3     The Debtor shall be entitled to manage its affairs and operate its businesses without further Order of this Court subject to the liquidation, terms and conditions of this Plan. No agent of the Debtor shall be compensated for managing the Estate's affairs and completing the Plan.

4.4     Upon Confirmation, the confirmed Plan shall become a binding agreement between the Debtor and its creditors, superseding all pre-petition obligations of the Debtor to its Creditors. So long as Debtor acts in accordance with the Plan terms, Creditors shall have no right of action (including but not limited to proceeding with a foreclosure sale and other State Court rights) against Debtor. Any such action by a Creditor violating this paragraph shall give the Debtor a Cause of Action against such Creditor for Damages, which shall be determined just as Damages are computed and allowed for a Violation of the Automatic Stay/Discharge Injunction/Confirmation Order.

4.5     This Plan is self-executing. The Debtor shall not be required to execute any newly created documents to evidence the claims, liens or terms of repayment to the holder of any Allowed Claim.

4.6     In the event that the Debtor defaults and fails to take any required action under this Plan (including both monetary and non-monetary provisions), and if the Debtor fails to correct the default within fourteen (14) calendar days after mailing notification to the Debtor and its attorney (with the exception of a default under the Settlement Agreement, in which case the notice and cure provisions of the Settlement Agreement shall control), the plan injunction shall be automatically terminated as to the party, its principals, agents, successors and/or assigns, upon filing of notice of

same with the clerk of the Bankruptcy Court;

## ARTICLE V EXECUTORY CONTRACTS

5.1.1 -The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: None.

5.1.2 - All executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned or rejected by the Debtor shall be deemed assumed by the Debtor as of the Confirmation of this Plan. Any proofs of claims regarding any accepted Executory Contracts shall be filed within thirty days of Plan Confirmation.

## ARTICLE VI
## COURT'S RETENTION OF JURISDICTION

6.1 The Bankruptcy Court shall retain jurisdiction after Confirmation to:

(i) consider applications for fees and allowances for professional persons;

(ii) supervise the implementation and enforce the terms of this Plan;

(iii) consider objections to claims against the estate of the Debtor and to modify the Plan based on the outcome of objections;

(iv) hear and conclude all adversary proceedings or contested matters;

(v) resolve disputes regarding interpretation of this Plan;

(vi) fix expenses of administration;

(vii) enter Orders for further consummation of the Plan;

(viii) approve modification of the Plan upon motions brought before the Bankruptcy Court;

(ix) consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation;

101546720.2

 (x) hear and conclude any adversary proceedings and other matters relating or giving rise to litigation recoveries;

 (xi) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

 (xii) enter an Order concluding and terminating this Chapter 11 Case;

 (xiii) enter an Order of Discharge if confirmed under § 1191(b); and

 (xiv) enter any order authorizing sale of real estate or any other property.

## ARTICLE VII
## CONFIRMATION AND DISCHARGE

7.1 If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code.

The Debtor will not be discharged from any debt:

(i) imposed by this Plan; or

(ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under §1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan,

or as otherwise provided in § 1192; or

101546720.2

(ii) excepted from discharge under § 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VIII
## UNCLAIMED PROPERTY

8.1 In the event that any distribution made by the Debtor under this Plan remains unclaimed one hundred and eighty (180) days after such distribution is made, this distribution will become property of the court to be distributed to general unsecured creditors and shall not be recouped in subsequent distributions. After expiration of the one hundred and eighty (180) day period set forth herein, the claimant whose funds remain unclaimed shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

## ARTICLE IX
## INVALIDATION OF LIENS

9.1 The provisions of the confirmed Plan shall bind all creditors and other parties in interest, whether or not such persons accept the Plan. The distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all Claims against any of the assets or properties of the Debtor. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded from asserting any Claim or lien against the Debtor that arose prior to the Petition Date or during the Chapter 11 Case and shall not retain any pre-petition liens except as allowed by this Chapter 11 Plan.

## ARTICLE X
## INTEREST AND PENALTIES

10.1 Except as otherwise provided herein, or required by the Bankruptcy Code, no default interest or penalties accruing on or after the Petition Date, shall be paid on any Allowed Claim nor

shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

ARTICLE XI
ALLOWANCE AND DISALLOWANCE OF CLAIMS

11.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. Debtor anticipates no disputed claims and the Debtor does not intend to further dispute claims beyond the treatment identified to those creditors under Class 1 of the Plan.

11.02 Claim Objection Deadline. The Debtor shall file any and all objections to claims on or before the date that is sixty (60) days after the Plan Effective Date, if any, except that Debtor shall not object or oppose the Toorak POC (Claim 9-3).

                                                                                 H & H Fast Properties Inc.,

                                                                                 By: /s/Paul M. Bach_____
                                                                                 Paul M. Bach, one of its attorneys

DEBTOR'S COUNSEL:
Paul M. Bach
Penelope N. Bach
Bach Law Offices, Inc.
P.O. Box 1285
Northbrook, Illinois 60062
847 564 0808

101546720.2